IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **LA TONJA ATKINS**,<br><br>Plaintiff,<br><br>v.<br><br>BP CORPORATION NORTH AMERICA INC.,<br><br>Defendant. | FILED: JUNE 6, 2008<br>08 CV 3288<br>JUDGE NORGLE<br>MAGISTRATE JUDGE MASON<br><br>No.<br><br>JH<br><br>**Jury Trial Requested** |

## COMPLAINT

NOW COMES Plaintiff, LA TONJA ATKINS, by her counsel, LISA KANE & ASSOCIATES, P.C., and complaining of Defendant, BP CORPORATION NORTH AMERICA INC., states as follows:

### PRELIMINARY STATEMENT

1.  This action seeks redress for the violation of rights guaranteed to Plaintiff by 42 U.S.C. § 1981. Plaintiff seeks mandatory injunctive relief, declaratory relief and damages to redress Defendant's discriminatory employment practices.

### JURISDICTIONAL STATEMENT

2.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1343(a)(3) and (4) and 28 U.S.C. § 1331 to secure protection and redress deprivation of rights secured by 42 U.S.C. § 1981. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

### VENUE

3.  Venue is proper under 28 U.S.C. §§ 1391(b)(1) and (2).

### PARTIES

4.  Plaintiff, LA TONJA ATKINS, is an African American citizen of the United States

who is a resident of Illinois.

5. Defendant, BP CORPORATION NORTH AMERICA INC., is a corporation properly recognized and sanctioned by the laws of the State of Indiana. At all times relevant hereto, Defendant has conducted, and continues to conduct, business in the State of Illinois.

## COUNT I – 42 U.S.C. § 1981- DISCRIMINATION

6. Paragraphs one (1) through five (5) are incorporated by reference as if fully set out herein.

7. Plaintiff, an African American, began her employment with Defendant on April 16, 2007 as an Assistant manager for its Streamwood Illinois facility.

8. Since the inception of her employment, Plaintiff has performed to Defendant's reasonable expectations, and any assertion to the contrary is pretext for race discrimination.

9. For the duration of Plaintiff's employment with Defendant, Defendant's management demeaned and mistreated Plaintiff because of her race, African American.

10. Defendant failed to address Plaintiff's multiple complaints of race discrimination and harassment, even though Plaintiff repeatedly complained to Defendant about the blatantly racist conduct she was subjected to by her manager and the racist graffiti directed against her at Defendant's Streamwood Illinois facility.

11. In late April 2007, Defendant hired Dan Moat, a Caucasian to be the Store Manager of its Streamwood Illinois facility. On May 1, 2007, Moat became Plaintiff's supervisor. In his position as Store Manager, one of Moat's responsibilities was to provide Plaintiff with training.

12. Rather than fulfill his job responsibilities and properly train Plaintiff, Moat instead provided Plaintiff with a litany of excuses for why he would not properly train her.

13. Contrary to Moat's misrepresentations to Plaintiff, beginning in July 2007, Moat

began to train Caucasian Customer Service Representative Jason to replace Plaintiff and Moat improperly assigned Jason many of Plaintiff's duties and responsibilities.

14. After noticing Customer Service Representative Jason assumed many of her duties and responsibilities, Plaintiff questioned Jason, who responded that "Dan [Moat] taught me everything! I know how to run the show."

15. On September 26, 2007, Plaintiff noticed the word "monkey" written by her name on the Activity Board at Defendant's Streamwood facility.

16. Immediately after noticing the racist graffiti on the activity board, Plaintiff complained to Caucasian Store Manager Moat, who refused to address Plaintiff's concerns.

17. When Plaintiff returned to work on September 27, 2007, the entire Activity Board was completely erased with the exception of the racist graffiti next to Plaintiff's name.

18. On September 27, 2007, Plaintiff again complained to Moat, who ignored Plaintiff's complaints. Because Plaintiff's complaints were not addressed, Plaintiff was forced to work her scheduled overnight shift in the presence of racist graffiti targeting her.

19. On September 28, 2007 Plaintiff again complained to Caucasian Store Manager Moat about the racist graffiti, but to no avail.

20. On September 29, 2007, Plaintiff complained to District Manager Tallena Hunt about the racist graffiti and how Moat was training Caucasian Jason to assume Plaintiff's duties and responsibilities in her position as Assistant Manager. In response to Plaintiff's complaints, Tallena Hunt directed Plaintiff to go home and assured her that an investigation would be conducted.

21. At approximately 6:15 a.m. on October 3, 2007, when Plaintiff returned to work, Moat informed Plaintiff that her employment had been terminated for the pretextual reason that she had been accused of being verbally abusive. When Plaintiff asked Moat if she could see the

allegations against her, Moat exclaimed "No because it's the property of BP and you no longer work for BP!"

22.     At approximately 9:00 a.m. on October 3, 2007, Plaintiff called District Manager Tallena Hunt and asked her why authorization was given to terminate Plaintiff's employment. Hunt then told Plaintiff that she would be placed on a three (3) day unpaid suspension pending an investigation.

23.     At approximately 8:30 a.m. on October 4, 2007, Plaintiff spoke to Human Resources Representative Joe Mautz and again reported the racial graffiti. Mautz informed Plaintiff that she would be called on October 5, 2007 to learn the status of her employment with Defendant. However, no representative of Defendant ever called Plaintiff to inform her of her status of employment with Defendant.

24.     On October 18, 2007, Plaintiff called Defendant's Human Resources Department and spoke with Human Resources Representative Joe Mautz, who initially claimed he could not recall Plaintiff's situation. When Plaintiff refreshed Mautz's memory, Plaintiff was informed that Defendant decided to terminate Plaintiff's employment.

25.     The aforementioned acts and omissions of Defendant constitute intentional discrimination against Plaintiff on the basis of her race, African American, and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

26.     As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered damages, including but not limited to, lost and foregone wages and benefits, and physical and emotional harm.

**PRAYER FOR RELIEF**

4

WHEREFORE, Plaintiff, LA TONJA ATKINS, Prays for judgment against Defendant and respectfully requests that this Court:

A.	Declare the conduct of the Defendant to be a violation of rights guaranteed to Plaintiff pursuant to appropriate federal law;

B.	Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice that unlawfully discriminates on the basis of race;

C.	Order Defendant to make whole LA TONJA ATKINS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D.	Order Defendant to pay lost, foregone, and future wages to LA TONJA ATKINS;

E.	Grant the Plaintiff consequential, compensatory, punitive and any other damages that the Court may deem appropriate;

F.	Grant the Plaintiff her attorneys' fees, costs, and disbursements; and

G.	Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## COUNT II – 42 U.S.C. § 1981- RETALIATION

27.	Paragraphs one (1) through fourteen (14) are incorporated by reference as if fully set out herein.

28.	On September 26, 2007, Plaintiff noticed the word "monkey" written by her name on the Activity Board at Defendant's Streamwood facility.

29.	Immediately after noticing the racist graffiti on the activity board, Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by complaining to Caucasian Store Manager Moat, who refused to address Plaintiff's concerns.

30. When Plaintiff returned to work on September 27, 2007, the board was completely erased with the exception of the racist graffiti next to Plaintiff's name.

31. On September 27, 2007, Plaintiff again engaged in protected activity under 42 U.S.C. § 1981 by complaining to Moat, who ignored Plaintiff's complaints. Because Plaintiff's complaints were not addressed, Plaintiff was forced to work her scheduled overnight shift in a facility in the presence of racist graffiti targeting her.

32. On September 28, 2007 Plaintiff again complained to Caucasian Store Manager Moat about the racist graffiti, but to no avail.

33. On September 29, 2007, Plaintiff engaged in protected activity under 42 U.S.C. § 1981 by complaining to District Manager Tallena Hunt about the racist graffiti and how Moat was training Caucasian Jason to assume Plaintiff's duties and responsibilities in her position as Assistant Manager. In response to Plaintiff's complaints, Tallena Hunt directed Plaintiff to go home and assured her that an investigation would be conducted.

34. At approximately 6:15 a.m. on October 3, 2007, when Plaintiff returned to work, Moat informed Plaintiff that her employment had been terminated for the pretextual reason that she had been accused of being verbally abusive. When Plaintiff asked Moat if she could see the allegations against her, Moat exclaimed "No because it's the property of BP and you no longer work for BP!"

35. At approximately 9:00 a.m. on October 3, 2007, Plaintiff called District Manager Tallena Hunt and asked her why authorization was given to terminate Plaintiff's employment. Hunt then told Plaintiff that she would be placed on a three (3) day unpaid suspension pending an investigation.

36. At approximately 8:30 a.m. on October 4, 2007, Plaintiff spoke to Human Resources

Representative Joe Mautz and again engaged in protected activity under 42 U.S.C. § 1981 by reporting the racial graffiti. Mautz informed Plaintiff that she would be called on October 5, 2007 to learn the status of her employment with Defendant. However, no representative of Defendant ever called Plaintiff to inform her of her status of employment with Defendant.

37. On October 18, 2007, Plaintiff called Defendant's Human Resources Department and spoke with Human Resources Representative Joe Mautz, who initially claimed he could not recall Plaintiff's situation. When Plaintiff refreshed Mautz's memory, Plaintiff was informed that Defendant decided to terminate Plaintiff's employment.

38. On information and belief, similarly situated employees who did not engage in protected activity were not subjected to the adverse actions directed against Plaintiff.

39. Any reasons proffered by Defendant for terminating Plaintiff's employment are pretext for retaliating against Plaintiff because of her complaints of race discrimination and racial harassment at Defendant.

40. The aforementioned acts and omissions of Defendant constitute retaliation against Plaintiff based on his opposition to the discriminatory work environment at Defendant and have deprived Plaintiff of the enjoyment of all benefits, privileges, terms and conditions of her employment in violation of 42 U.S.C. § 1981.

41. As a direct and proximate result of the above alleged willful and reckless acts or omissions of Defendant, Plaintiff has suffered injury, including, but not limited to, lost and foregone wages and physical and emotional harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, LA TONJA ATKINS prays for judgment against Defendant and respectfully request that this Court:

A. Declare the conduct of Defendant to violate the rights guaranteed to Plaintiff under appropriate Federal Law;

B. Grant a permanent injunction restraining Defendant, its officers, successors, assigns, and all persons in active concert or participation with them, from engaging in any employment practice which retaliates against an individual for complaining of an unlawful employment practice;

C. Order Defendant to make whole LA TONJA ATKINS by providing the affirmative relief necessary to eradicate the effects of Defendant's unlawful practices;

D. Order Defendant to pay lost, foregone, and future wages to LA TONJA ATKINS;

E. Grant Plaintiff actual, consequential, compensatory, punitive and any other damages the Court may deem appropriate against Defendant;

F. Grant Plaintiff HER attorney fees, costs, disbursements; and

G. Grant Plaintiff such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

42. Plaintiff requests a jury trial on all issues of fact and law raised by the allegations in this complaint.

          Respectfully submitted,
          LA TONJA ATKINS

          By: s/Lisa Kane
               Lisa Kane, Attorney for Plaintiff

LISA KANE & ASSOCIATES, P.C.
Attorney for Plaintiff
120 South LaSalle Street, Suite 1420
Chicago, Illinois 60603
(312) 606-0383
Attorney Code No. 06203093

08CV 3288
JUDGE ANDERSEN
MAGISTRATE JUDGE ASHMAN

JH

## Verification

I, LA TONJA ATKINS, declare under penalty of perjury that the foregoing is true and correct.

Executed June 6, 2008.

*[signature]*
LA TONJA ATKINS